## COURT OF APPEALS, NOV. TERM, 1802.

### GARRETSON *vs.* COLE.

*If a patent be obtained fraudulently, or contrary to the rules of the land office, it is voidable or void as well as in a court of law, as in a court of equity—and if suit be first brought at law, in which the validity of such patent might be tried, equity will not afterwards interfere.*

*Where a court of equity decrees a conveyance from the defendant to the complainant, and on the service of a copy of the decree, under seal, with the tender of a deed in pursuance of the decree, the defendant refuses to deliver up possession, and to execute the deed, a writ of injunction, to compel delivery of the possession, may be issued.*

*Form of such writ.*

*If that writ be not obeyed, the court will grant "an habere facias possessionem."*

*Form of such writ.*

APPEAL from a decree of the court of chancery, in favour of the complainant in that court. The bill stated that *Cole*, (the appellee,) on the 12th of February 1771, obtained a common warrant from the land office for 60 acres of land, and paid the caution money on it. That within five days from the date of the warrant, he took it to the surveyor of Baltimore county, (to whom it was directed,) and had it located on certain vacant land in that county, which the appellee had first discovered, adjoining *Grindall* and *Taylor's Addition*, and that the surveyor endorsed that location on the warrant, and also entered it in his book, but that both the warrant and the book, were either mislaid or lost. That this warrant was renewed from time to time, according to the rules of the land office, until the 8th of January 1773, when it was executed, and a certificate thereof returned, calling the land *Cole's Discovery*, and stating it to contain 310 acres, and that a patent for the same issued to the appellee on the 10th of April 1775. That *Garretson*, (the appellant,) having been informed by one of the deputy surveyors of the county aforesaid, of the vacancy which the appellee had, as above stated, discovered, did, on the 10th of May 1771, get a special warrant for one hundred acres of vacant land lying in Anne Arundel county, which had been long before granted to one *John M'Donald*, renewed in his,

(the appellant's) name, with liberty to execute it on the same quantity of vacant land in Baltimore county, adjoining *Sheredine's Discovery, Mount Royal* and *Grindall.* That he had this warrant executed, and a certificate thereof returned, dated the 17th of June 1772, calling the land *The Silent Cyphers of Africa,* and making it contain 665 acres. That this warrant was not executed, according to its express directions, on vacant land adjoining the tracts called *Sheredine's Discovery, Mount Royal* and *Grindall,* but that elder tracts were crossed, and vacant land included by it, which did not lie adjoining these three tracts, taking in, in this way, all the vacancy embraced by the appellee's certificate, except about 111 acres. That the appellant's certificate was, by this fraud, and that of the deputy surveyor before mentioned, dated prior to the appellee's. That the appellee was entitled to a preference, because his warrant was located, (as he before stated,) by the endorsement and entry thereof in the surveyor's book, both of which were anterior to the actual date of the appellant's certificate; and because also the warrant of the appellee was executed according to the rules of the land office, and that of the appellant in opposition to them; but more especially, because the vacancy included in the appellee's certificate could not have been correctly included in the certificate of the appellant, as it did not adjoin the three tracts which his warrant called for. That in consequence of these facts, the appellee caveated the appellant's certificate, on the 22d of January 1773, which caveat was never heard by the judges of the land office, in consequence of the fraud and contrivance of the appellant, who on the 6th of November 1775, petitioned said judges for a dismissal of such caveat, stating that the appellee had removed out of the state to a place called *Juniata,* a great distance from this state, with an intention to reside there, in consequence of which the caveat was dismissed, and a patent issued to the appellant on his said certificate. That the appellee however never did remove away, but was living on the said land at the date of this pe-

tition, which was known also to the appellant. That according to the practice of the land office at that time, a caveat could not be dismissed but after a hearing or notice to the parties, and their neglecting to attend. That the appellant having thus obtained a patent, brought an action of ejectment in the general court against the appellee, for the said land, and got judgment thereon against him, *that court being of opinion that the appellant had the legal title from his certificate's being older, his patent having relation back to the date of the certificate(a)*. That execution was had on this judgment against the appellee for the costs, which he would have to pay, and possession given of the said land to the appellant. All of which doings of the appellant, and his confederates, are stated to have been contrary to equity and good conscience, and the bill therefore prayed for the usual process against the appellant, and that he might be compelled to convey to the appellee all the land included in the certificate of *The Silent Cyphers of Africa,* which was embraced by the appellee's certificate of *Cole's Discovery,* concluding with a prayer for general relief, &c.

The appellant's *answer* denied all the fraud charged by the bill, and stated that he got *McDonald's* warrant assigned to him for a valuable consideration. That his certificate had not been antedated by his contrivance, or that of the deputy surveyor, but bore date on the day it was executed, as it ought to have done. It admitted that the caveat stated by the bill had been put in by the appellee against the appellant's certificate, and that it had been dismissed on the petition stating the facts mentioned by the bill, but denied that the appellant had any knowledge of that petition, or gave his consent to its being filed as it was. It also admitted, that the facts stated in that petition were untrue. That the petition must have been filed by one Cox, who acted as the appellant's agent, having been spoken to by him for that purpose when he was going to Annapolis, but that he gave him no other instructions than to get the caveat dismissed. It denied that any other va-

(a) 2 *Harr. & McHen.* 459.

cancy was included by the certificate of *The Silent Cyphers of Africa*, than lay adjoining the tract called *Grindall*, one of the tracts called for by the warrant; and stated, that if there was, it could not injure the appellant's title to that which did lay adjoining those tracts. It also admitted the judgment in the general court, and the execution on it, and the delivery of possession, &c. as stated in the bill, and concluded with a prayer to be dismissed, &c. with costs.

The proof taken under a commission in the cause, was the surveyor's deposition, stating that he thought that about 22 or 23 years back, he had made an entry on *Cole's* warrant, of its location, as stated in the bill, or in a book kept by him for that purpose, but that he burnt many papers supposed by him, at the time, to have been useless, amongst which he thought it likely was this warrant and book. He also stated, that the appellant's warrant was executed by his deputy; and several other facts not necessary to the understanding of the points decided by the court, and which are therefore omitted to be stated by the Reporters.

HANSON, Chancellor, at February term 1797, passed the following decree, viz.

The said causes standing ready for hearing, and being submitted on the written arguments of the counsel on each side, the bill, answer, depositions, exhibits, arguments. and all other proceedings, were by the chancellor read and considered.

The case appears to be thus.—Under the old government each of the parties obtained a patent in which the land in dispute is included. Each of the surveys, on which those patents issued, if properly made, was authorised by warrant; although neither of them was made under a special warrant designating the land, nor does there appear to have been any locations giving a title to the said land before the survey was actually made.

*Garretson had the elder survey, Cole the elder patent; and according to an established doctrine at law, Garretson's title prevailed over Cole's. Cole* therefore applies to this court for a decree, either to vacate

*Garretson's* patent, or to compel him to convey; and the grounds of his application, supported by the proofs, are as follows:

*Garretson's* survey violated the fixed rules of the land office in running through and taking part of a patented tract, and by including two distinct pieces of vacancy, between which run the said part of a patented tract; the second piece of vacancy was afterwards comprehended in *Cole's* survey; and *Cole* therefore caveated *Garretson's* certificate.

By the uniform practice of the land office no caveat could be dismissed without hearing, or at least giving the caveator an opportunity of being heard; provided he could be served with notice of hearing. Instead of taking measures to have *Cole's* caveat fairly heard, *Garretson,* or some person in his behalf, preferred a petition to the judges, suggesting that *Cole* had removed a vast distance from the province; and as there was no probability of his return, the petition prayed a dismission of his caveat, and a patent on *Garretson's* certificate. The caveat was dismissed, and a patent was issued without the judges requiring any proof of the suggestion, which on a fair investigation would have turned out altogether untrue and groundless.

The object then of *Cole's* application to this court is to be placed, in effect, in the situation, in which he would have been, after a full and impartial hearing before the judges of the land office.

From the beginning of the court of chancery it has exercised its jurisdiction in relieving against fraud and imposition; and no instance can be shewn, where it has refused its aid to prevent the person who has practiced fraud or imposition from depriving another *thereby* of his right. If the agency of a third person could avail *him* in whose favour a fraud is practised, it is probable that such agency would always be procured; and therefore this court will not distinguish between that which is perpetrated by a man on his own account, and that which he does in behalf of another.

The bare statement of the circumstances of this case, and of the principles of this tribunal, will perhaps point out on which side the decision must be given.

It has been insisted on *Garretson's* part, that under a positive regulation prescribed by the Lord Proprietary to his judges, he was entitled, from the lapse of time, to a dismission of the caveat, without suggesting more than appeared on the records of the office; and that therefore the false suggestion ought to have no effect *here*. It is however certain, that as the judges never adopted or obeyed a regulation which. appeared injudicious and unreasonable, *Garretson* would not have obtained a dismission of the caveat, had he grounded his application solely on the regulation and lapse of time. It was unquestionably the suggestion alone by which he obtained a grant prevailing at law against *Cole's* grant for land, to which *Garretson* never had an equitable title. If indeed he had, the chancellor might properly say to *Cole*—"It "may be true that *Garretson* has prevailed against "you by a suggestion of falsehood, but on the other "hand you had, against conscience, endeavoured to "deprive him of that to which he was honestly entit-"led. Let matters then remain as they are, neither "you nor any other man will ever induce this tribunal "to interfere for the purpose of permitting strict rules "of office, or rigid law to defeat equity."

It has been urged too, that *Garretson* had surveyed under a proper warrant, and more than paid for that vacant land which was grantable to the first person surveying it, or in any manner locating it properly for making a survey; and which had not been surveyed or located for any other person, he had a clear equitable title at the time of *Cole's* survey; and that if *Cole* could have succeeded on a hearing of his caveat, he must have been indebted to a rigorous unmeaning regulation, against the plain dictates of justice. But every thing is not here stated. Every man applying for a warrant to secure land, knew, or ought to know, that, agreeably to the conditions of

plantations, or the terms of the office, a grant would not be issued on a certificate. which either comprehended land before granted or contained two distinct tracts. The very warrant itself prohibited the running into an elder tract—and there were substantial reasons for adhering to the rule, directing only one tract in a grant. On its appearing to the judges that the rule had been violated, they either vacated the certificate, or ordered it to be corrected by excluding the elder grant. or *that piece of vacancy which was unconnected with or not contiguous to the beginning of the survey.*

It is probable that many grants have issued on certificates like *Garretson's*, where the violation of the conditions neither appeared on the face of the certificate or plot, nor was otherwise shewn. But whoever obtained such a grant, succeeded against what may be termed his contract with the Proprietary; and it is by no means clear that if it had been an object, the grant might not be vacated. However, the question is not material to this cause. Incontrovertible it is, that when *Cole* made his survey, comprehending land, which he knew to have been already surveyed for *Garretson*, *Garretson* had neither a legal nor equitable right. *Garretson's* survey, as to that land, was an imposition on the Proprietary; and although on account of its fair appearance, it was not absolutely void, it was liable to be so construed, on shewing the violation of the rule. In short, there had been nothing done on the part of the Proprietary by way of contract, that *Garretson* should have the land. On the contrary, the Proprietary by his regulations, had declared that he would not grant the land on that survey made by *Garretson*. When *Garretson* had paid the caution money, the agent did not receive it, as money paid for two distinct pieces of vacancy, and a parcel of land before granted. The agent received it as money paid for one entire piece, which might be granted agreeably to the regulations—and *Garretson's* certificate had told him that it was one entire tract. How then can *Garretson* possibly be supposed to have had any just

title whatever or even an incipient title at the time of Cole's survey?

Upon the whole, it is this 25th day of March 1797, by *Alexander Contee Hanson*, Chancellor, and by the authority of this court, adjudged, ordered and decreed, that the injunction heretofore issued in this cause be and it is hereby declared to be perpetual, and that the defendant, *Job Garretson*, by a good deed, to be acknowledged and recorded agreeably to law, give, grant, bargain and sell, release and confirm, unto the complainant, *Richard Cole*, and his heirs, all that part of the tract of land in *Baltimore* county called *The Silent Cyphers of Africa*, or *The Silent Zephyrs of Africa*, which is contained within the lines of a tract of land called *Cole's Discovery;* to have and to hold the said land to him the said *Richard Cole*, and his heirs, to the use of the said *Richard Cole*, and his heirs only.

It is further decreed, that each of the parties to this cause bear his own costs in this court."

From this decree, *Garretson* appealed to this court, and at June term 1799 the decree was entered *affirmed* with costs.

After this affirmance *Cole*, on the 19th of September 1799, exhibited his petition to the chancellor, stating the decree, and that *Garretson* had been served with a copy thereof under seal, and required to execute the deed exhibited, and to comply with the terms of the decree, and praying an attachment of contempt against *Garretson* for his noncompliance with and disobedience of the decree.

THE CHANCELLOR, on the same day, having considered the petition, and affidavit having been made to his satisfaction of the service of a copy under the great seal of the state, of the decree as stated in the said petition, and of the refusal and neglect or delay of *Garretson* to obey, fulfil, and perform the same, did adjudge and order, that attachment, returnable to the next term, be issued against *Garretson* for a contempt of the court in refusing and neglecting, or delaying to obey, fulfil and perform, the said decree.

An attachment accordingly issued, and was return= ed *"attached."*

On the 14th November 1799, *Cole* again petitioned the chancellor, stating that the attachment of contempt issued against *Garretson* for disobeying the chancellor's decree, having been postponed at the request of *Garretson*, and his counsel, under an engagement to *deliver possession of the land in dispute* to *Cole*, on the second Tuesday of the present month of November, (provided the court of appeals did not reconsider and reverse their said affirmation,) and that as *Garretson* was under execution returnable to the court of appeals for the costs in this case, *Cole* did consent that the attachment should not be enforced until the second Tuesday of this instant—but that as *Garretson* had not complied with his engagement, and was continuing to commit waste on the land, *Cole* requested that the order for the sheriff to bring down *Garretson*, be renewed, &c.

· THE CHANCELLOR did, on the same day, order that the sheriff bring into court on the third day of December next, the defendant *Job Garretson*, whom the said sheriff, as appeared by his return, had attached in virtue of an attachment which heretofore issued, returnable on the first Tuesday of October last.

On the 3d of December 1799, *Garretson*, by his petition to the chancellor, after stating the decree and appeal to the court of appeals, further stated, that the said appeal was to have been argued at June term 1799, but owing to the sickness of one of the judges no business could then be done; that the court was adjourned until the last of August, when the petitioner's counsel was prevented by indisposition from attending, but he made an arrangement with *Cole's* counsel for the continuance of all the cases in which the petitioner's counsel was concerned, and to prevent any entry being made in any case to the injury of his clients. That the court of appeals, when they met in August, set only part of a day; that no arguments were had before them, and that all cases meant to be

argued were continued until the second Monday in November, except the appeal of said *Garretson* against said *Cole*, which was entered *affirmed*; that he is unwilling to suppose that this entry was obtained through trick and artifice; but he saith, he is informed and believes it to be true, that the court had not examined the record, and determined upon the merits of the decree, but that no counsel attending for the petitioner, and the court not knowing the reason of his absence, nor that the cause was meant for argument, the entry was made as an entry of course as far as the court had any share in directing, or assenting to the entry. That soon after the adjournment of the court of appeals, the petitioner, to his great surprise, was called upon by *Cole* to execute a deed to him, alleging that the decree was affirmed by the court of appeals; upon which the petitioner applied to his counsel, (who was confined to his bed by sickness,) who informed the petitioner it was impossible that the decree should be affirmed, or if it was affirmed it must have been so entered through accident or mistake, and advised the petitioner *to* sign no deed until he should be able to make inquiry into the matter. That in consequence of his refusing to execute the deed, an attachment was served on the petitioner, but that when he attended at Annapolis upon the said attachment, his counsel, who was then at that place, conversed with *R. R.* the counsel of *Cole*, upon the impropriety of the proceedings which had been had in the petitioner's case, and it was agreed by the said *R. R.* that no further proceedings should be had on the said attachment, until the court of appeals met, in order that if they thought justice required it, the entry of affirmance might be struck out, and the case be admitted to be argued; and an instrument of writing was signed by the said *R. R.* and the petitioner's counsel, and that the petitioner need not attend until the first Monday in November, which was so expressed, in consequence of the petitioner's counsel having been misinformed that the court of appeals had adjourned until the first, instead of the second Monday in November. That the peti-

Nov. 1802

Garretson
vs.
Cole.

tioner was again called upon and compelled to go to Annapolis on the first Monday in November, but having a letter from his counsel to the said *R. R.* who well knew the agreement to have been that he was not to be obliged to attend until the meeting of the court of appeals, the petitioner was again dismissed, and suffered to return home. · That he has no doubt but had the court of appeals made a court on the second Monday of November, to which they adjourned, they would have had the entry made in the said suit, struck out, and would have admitted the said cause to be argued, but unfortunately, by the absence of one of the judges, no court was held that could make any entry, or do any business. That in consequence of the court of appeals having twice failed to meet at the times when they might have had a session, there will be a necessity to have an act of assembly in order to enable the court of appeals to bring forward such causes as ought to have been decided at the sessions of November 1798, and June 1799, and which have been discontinued, as justice in their opinion shall require to be brought forward; and the petitioner expected there would be a provision, that if said court shall think, under the circumstances of the petitioner's case, justice requires it, they shall be empowered to reinstate the said case, and make any entries therein which they might have made had they met on the said second Monday of November, to which day they adjourned. That all his desire is to have his cause fairly and candidly heard and determined; if on such hearing and determination, the decree shall be affirmed, he will cheerfully submit thereto, and comply therewith. That the petitioner hath been actuated by no want of respect to the chancellor, or to the court, but has declined doing any act which might injure his title in consequence of the reasons before stated. He feels the strongest confidence that the chancellor is one of the last persons in the state who would wish to prevent him from a fair and full discussion of his case in the court of appeals, or who would, had he known the circumstances of the case, suffered the process of the

court of chancery to be used for such a purpose. He prays that all process upon the said attachment may be staid, &c.

THE CHANCELLOR, on the same day, having considered this petition of *Garretson's*, together with the deposition therein referred to, and the petition appearing reasonable, it was adjudged and ordered, that *Garretson* be discharged from the attachment issued against him at the suit of *Cole*, on his, *Garretson's*, paying the costs of the attachment; provided nevertheless that if, at any time hereafter, at the instance of *Cole*, and at discretion, the chancellor may issue against *Garretson* an attachment or other process for not complying with the final decree obtained against him by *Cole*.

On the 21st of January 1800, *Cole* renewed his petition to the chancellor for an order directing the sheriff to bring into court the body of *Garretson*; and the CHANCELLOR on the 27th of the same month, passed an order that the sheriff of *Baltimore* county bring into the court, on the first day of the next term, viz. on the 18th of February next, the body of *Garretson*, whom the said sheriff had returned attached—on the 19th of February 1800, *Cole* filed a new petition, stating the decree and affirmance, and services, &c. and prayed for an attachment, &c.

*Martin*, (Attorney General,) solicitor for *Garretson*, to whom the chancellor had given an opportunity to shew cause why an *attachment ought not to issue* in this case, contended, in the first place, that there had not been a proper foundation laid even for the former attachment which issued; for these reasons,

1. There ought to have been a *writ of execution* of the decree served upon the defendant before an *attachment of contempt* could be issued for noncompliance. A copy of a decree, under seal, and the shewing it to the party, and leaving a copy of it with him, is very different from *a writ of execution of a decree, and the service of it*, and is insufficient.

HARVARD LAW SCHOOL LIBRARY

2. That the copy was served by one *Sindall*, as an attorney for *Cole*, and by him the deed was tendered —But it is not stated that he shewed to *Garretson* the power of attorney, It is true, he says he left with him a copy of it, but that copy would not enable him to determine whether it was genuine or false. Nay, had he shewn the original power, *Garretson* could not have known, whether the name signed thereto, or the name of the witness, were genuine, and the instrument, as will appear by the chancellor's view, carries with it great cause why it should be suspected, from the variety of alterations appearing on its face.

3. A person, who is obliged to convey, is not obliged to do it at the instance of any person to whom the deed is to be made, nor to know that he is an attorney for the person; nor is a person obliged to take a deed executed by a power of attorney, and so it has been determined.

4. There was not produced to *Garretson* a certificate of the clerk of the court of appeals that the decree was affirmed; and without that, *Garretson* was not obliged to notice the application made to him, especially as it was not made by any person authorised by the court of chancery, nor any writ of execution of the decree from the court of chancery shewn to him, or served upon him.

5. When the said copy of the decree was served on *Garretson*, he was in the custody of the sheriff, and locked up in gaol, as *Sindall* proves himself, he therefore could not have executed the deed had he wished so to have done. It is true he might have signed and sealed it, but he could not have perfected it.

6. Every man, when a deed is offered to him to execute, has a right by law to lay it before counsel learned in the law, to have their opinion whether it be such a deed as he is required to execute, in order that he may avoid the injury which otherways artful, designing men might cause him to suffer, by taking advantage of his ignorance. This *Garretson* could not do, circumstanced as he was when the application was made to him; therefore the application made to

him under such circumstances, and his refusal, was not a contempt, or ground for an attachment.

He adverted to *Garretson's* petition to the chancellor of the 3d of December, and the chancellor's order thereon discharging *Garretson*, &c. And appealed to the chancellor's knowledge of the law, whether, after a person has been heard, and by a solemn decision discharged from an attachment, he can afterwards be attached by reason of the acts for which he had been formerly attached, and on a hearing discharged. He thinks he hazards nothing in saying, that in the annals of judicial or equitable proceedings nothing of the kind can be discovered, and that such procedure would be an outrage to common sense and common justice.

Has any thing been done since the discharge of the 3d of December to entitle *Cole* to obtain an attachment against *Garretson?* Has, since that time, any writ of execution of the decree been served upon him? Has, since that time, any deed been offered to him to sign? Nothing of the kind is pretended.

Upon the principle, which caused the chancellor to discharge *Garretson* on the 3d of December, it is contended that no procedure ought to be had before the time when the court of appeals shall meet; and it is very respectfully submitted to the chancellor, that in the *previous* application there has not been much respect shewn to him or to the court of appeals.

A law passed the last session, (November 1799,) directing the court of appeals in what cases they are empowered to reinstate actions. On this law *they are to act.* It rests therefore *with them*, and *with them only*, to give it a construction in the *first* instance, and also in the *last.* To that court application will be made to reinstate the case of *Garretson* against *Cole*, and no doubt they will take care there shall not be a failure of justice.

Why should an attachment be granted? Why should it be applied for? When by a law of this state, the *decree* if *honestly* affirmed, is as valid, and gives *Cole* all the rights which could flow from *a conveyance under the decree.* Why then do *Cole*, and his counsel, at-

tempt *per fas et refas* to force *Garretson* to execute a deed, except to obtain an advantage which they are conscious they cannot obtain from the mistaken or fraudulent entry of affirmance; and is a court of chancery obliged to aid and support what is founded in error or fraud? On the contrary, it is among the most sacred duties of that court to protect against, and relieve from fraud, error or imposition.

THE CHANCELLOR, on motion of *Cole's* counsel, granted him leave to amend his last mentioned petition of the 19th of February, in any manner he thought proper. And the petition was amended, praying that the chancellor would decree the title to be vested, and issue a writ of injunction, in the nature of the *habere facias possessionem*, to deliver to *Cole* the possession of the land and premises in the decree mentioned.

HANSON, Chancellor, on the 24th of February 1800, passed the following decree:

"The complainant applies, by petition, for an injunction or process of some kind, to secure him the benefit of the decree, long since passed in this court, and affirmed in the court of appeals.

The defendant, by his solicitor, insists that, notwithstanding the said decree and affirmance, there is no foundation for any process whatever.

The nature of the present contest requires, in the chancellor's opinion, that he should make some remarks on proceedings, in which, from mere tenderness to the defendant, he went perhaps to at least the verge of impropriety. It would seem, as if some of those proceedings were expected to be ruinous to the complainant's cause; and contemptible indeed must be the jurisdiction of this court, if from its defects, a man, in any case, is to derive no benefit from a decree, which it is authorised to make.

Although from the bill, answer and proofs, it appeared, that the defendant had merited a vacation of his patent, and that in strictness, a vacation might, and ought to be decreed, the chancellor, on deliberation conceived, that he might only decree that, which

he supposed would fully relieve the complainant, with-out further loss to the defendant, than that relief re-quired. He therefore decreed a conveyance by the de-fendant of the land in question.

To administer justice with mercy, the chancellor has constantly considered the great duty of a judge. Every judge, on his entrance into office, should be enjoined to do this, and much is to be lamented, if the conduct of the persons to whom that mercy is in-tended to be shewn, shall dictate the necessity of ad-ministering strict justice, without regard to mercy. If they cannot consist with each other there is no doubt that the latter must yield to the former.

By the appeal of the defendant, the complainant had long been excluded from the benefit of the de-cree. The defendant was duly served with copy of it, under seal, to which was annexed a copy of the affirmance, and on proof to the satisfaction of the chancellor, of the said service, and of the defendant's neglect, and even refusal to obey, an attachment for contempt was, at the complainant's instance, issued against him. But the complainant, by his counsel, soon after consented to waive, or suspend, the benefit of the attachment, until the court of appeals should be applied to by the defendant at its next sitting, to reinstate the cause and decide on argument. By so doing he granted no inconsiderable indulgence to the defendant. But the defendant, disappointed in his ex-pectation by the court of appeals, conceives that the legislature will reinstate the cause, and, on his peti-tion to the chancellor, is absolutely discharged from the attachment, on the express proviso that another attachment, or other process, shall hereafter issue, &c. &c.

The legislature has indeed passed an act for rein-stating all causes which went off the docket of the court of appeals undecided, but has made no particu-lar provision, relative to this cause. It is however alleged, that notwithstanding an affirmance of the chancellor's decree in the usual way, the cause has not been decided by the judges of appeals; that they alone can determine whether or not there has been a

*Margin:* Nov. 1802.

Garretson
vs.
Cole.

decision, and that this court ought not to proceed until the decision shall have been obtained.

The chancellor will not presume to assert what that decision would or may be. He cannot be absolutely certain, that that honourable body will not say, that in a case where they have affirmed the chancellor's decree they have not decided the cause. But when the chancellor is applied to, as for a matter of common right, for process to enforce his decree, he is to be satisfied that there is just cause for refusing the process. He is otherwise to give his order for its issuing. The mere suggestion that the court of appeals may decide that a cause, in which they have affirmed a decree, has gone off undecided, is by no means, in his opinion, a reason for refusing the process.

The only question, which the chancellor has now to decide is, what is the proper process for giving the complainant the full benefit of the decree?

That another attachment might issue, the chancellor, under the circumstances of the case herein before stated, entertains not the least doubt, but it certainly is not the best process for the complainant's purpose.

The defendant's counsel may be right in his idea, that the decree is in law equivalent to a conveyance, and if so there is no need of compelling a conveyance, nor would a conveyance only render the complainant full justice. However the chancellor is satisfied, that the complainant was entitled to process to enforce the conveyance, and that the attachment which issued, was strictly proper, and reasonable. For although *Garretson's* deed might not be absolutely necessary for completing *Cole's* legal title, it was certainly eligible, in order that all doubts, which might be entertained by *Cole* and others, unlearned in the law, might be dissipated, and the opinion in favour of his title established.

Now if the defendant was really satisfied that the decree was sufficient to invest *Cole* with the legal title, why should he refuse to execute the tendered deed? With what colour does he complain of the hardship

Nov. 1802.

Garretson
vs.
Cole.

to which the attachment subjected him. It is the first time perhaps that a man in such a way has dared to complain of oppression, in being required to do that, which in his own opinion was to have no operation to his prejudice, and which had been directed by the adjudication of a court of justice. If there be oppression it is by the decree, and not by the complainant's taking out under the chancellor's order process to enforce it. Had this court decreed a vacation of the patent instead of a conveyance of part of the land it contained, there would have been no ground for this complaint.

The process or writ, which will best serve the complainant, is an injunction to deliver possession. After much deliberation on the subject, and examination of the books, it appears to the chancellor proper to be granted. Here has been a decree for vesting a legal title in the complainant by a conveyance from the defendant, whose neglect to perform the decree (even if it had not been served upon him) under the act of 1785, has rendered the decree equivalent to a conveyance.

The complainant's title then is here established, and therefore he must be supposed in conscience and equity entitled to the possession.

An injunction for possession is not a new thing in a court of equity. It has long been used in England; it is directed in certain cases by the aforesaid act of assembly; and it would disgrace our laws and administration of justice, if, after a title to land has been established by the adjudication of a court, there could be no way of obtaining possession, but after obtaining judgment in ejectment.

On the whole it is adjudged, ordered and decreed, that the defendant *Job Garretson*, having neglected to execute the deed by the original decree in this cause directed, the said decree hath operated as the said deed would have operated, to convey unto the complainant *Richard Cole*, and his heirs, the land thereby directed to be conveyed; that the defendant *Job Garretson* deliver possession of the said land to the said complainant, and that an injunction issue from this

Nov, 1802.

Garretson
vs.
Cole.

Writ of *Injunction* from the court of chancery to compel the defendant to deliver possession of lands to the complainant, pursuant to a decree, &c.

court, directing the said defendant to deliver the said land to the said complainant."

*Injunction* accordingly issued as follows, viz. "Maryland, sc. The State of Maryland to *Job Garretson,* of Baltimore county, and every and all other person and persons whatsoever, who are in possession of all or any part of that part of the tract or parcel of land, situate in the county aforesaid, called *The Silent Cyphers of Africa,* or *The Silent Zephyrs of Africa,* which is contained within the lines of a tract of land called *Cole's Discovery.* Whereas it hath been represented to the court of chancery, in a cause wherein *Richard Cole* is complainant, and you, the said *Job Garretson,* are defendant, that by the original decree in the cause passed on, &c. it was decreed that, &c. and that affidavit was afterwards made to the satisfaction of the chancellor, of the service of a copy of the said original decree, under the great seal of the state, upon you the said *Garretson,* and of your refusal and neglect to obey, fulfil, and perform the said decree; and that by a subsequent decree or order made in the said cause on the, &c. it was adjudged, ordered and decreed, that you the said *Garretson,* having neglected to execute the deed by the said original decree directed, the said decree hath operated, as the said deed would have operated, to convey unto the said complainant, *Richard Cole,* and his heirs, the land thereby directed to be conveyed, and that you the said *Garretson* should deliver possession of the said land to the said complainant, and that an injunction issue against you the said *Garretson,* to enjoin you to deliver possession of the said land to the said complainant; and the matters stated in the said representation being all just and true, Therefore, in consideration of the premises, you the said *Job Garretson,* your servants, slaves, agents, and all persons assisting you, and every and all other person or persons in possession of the said land, are strictly enjoined and commanded, that you, each and every of you, do deliver the possession of the said land and premises, and of every part and parcel thereof, to the said complainant *Richard Cole,* pursuant to the said decree; and that you cease from any further molesta-

tion of the said *Richard Cole*, in the quiet possession of the said land. Hereof fail not at your peril. Witness," &c.

On the 7th of March 1800, *Cole*, by his petition to the chancellor, represented, that on the 4th inst. he caused the injunction heretofore issued in this cause, for delivery of possession of the land specified in the said decree, to be served on the defendant *Garretson*, and on a certain T. S. a tenant in possession of part of the said land, as by the annexed affidavit appeared. That the said *Garretson* and T. S. both refused to comply with and obey the said injunction. He prayed that a commission or writ might issue to the sheriff of Baltimore county, to put the petitioner in possession of the said land, pursuant to the directions of the said decree and injunction, &c.

HANSON, Chancellor, on the 15th of March 1800, ordered that a writ or commission issue as prayed.

*Habere facias possessionem* accordingly issued as follows, viz. "Maryland, sc. The State of Maryland to the Sheriff of Baltimore county, Greeting. Whereas by the original decree passed in the court of chancery on, &c. in a cause wherein R. C. is complainant, and J. G. is defendant, it was decreed, &c. And whereas by a subsequent decree or order, made and passed in the said cause on the, &c. it was adjudged, &c. And whereas according to the decrees aforesaid, and in conformity therewith, on the, &c. an injunction did issue directed to the said J. G. his servants, slaves, agents, and all persons assisting him, and every and all other person or persons in possession of the said land, commanding that he the said J. G. and all and every person or persons aforesaid, should deliver the possession of the said land and premises, and every part and parcel thereof, to the complainant R. C. and that he the said J. G. should cease from any further molestation of the said R. C. in the quiet possession of the said land: And whereas it hath been represented to the said court of chancery, that on the 4th of March instant, at the county aforesaid, a true copy of the injunction so as aforesaid issued was served on and de-

*Writ of habere facias possessionem from the court of chancery, after a refusal by the defendant to comply with a writ of injunction requiring him to deliver possession of lands to the complainant.*

livered, in the presence of the said complainant, to the said J. G. and at the same time the original injunction, with the great seal appendant thereto, was shewn to the said J. G. and that the said complainant R. C. did then and there request and demand of the said J. G. that he would deliver the possession of the land in the said writ mentioned, according to the directions of the said writ, which he the said J. G. absolutely refused to do; and that on the same day, and in manner aforesaid, a true copy of the said writ of injunction was also shewn and delivered to T. S. a tenant of the said J. G. and the original writ, with the great seal as aforesaid, was also shewn to the said T. S. and that the complainant R. C. then and there made the same request and demand of the said T. S. which he then and there absolutely refused to comply with; and the said R. C. having applied to the said court of chancery for additional process to enforce the said decrees, Know ye therefore, that to complete and carry into full effect the decrees of the said court of chancery, made and passed in manner aforesaid, the said court of chancery hath given, and from this time doth give to you, full power and authority to the land and premises aforesaid, situate in Baltimore county aforesaid, and in the decrees and injunction aforesaid mentioned and expressed, you approach and enter, and from thence the said J. G. and the said T. S. as well as all and every other person or persons in possession of the premises being, against the form and effect of the decrees and injunction aforesaid, you remove, and the said R. C. in full, quiet, and peaceable possession of all and singular the premises aforesaid, immediately, and from time to time, as often as necessary, you put and place; and that the said R. C. so being put and placed in possession, you protect and keep quiet; and therefore you are hereby commanded, that immediately after the receipt of this writ, to the land and premises aforesaid you approach and enter, and the said J. G. and the said T. S. as well as all and every other person and persons in possession of the said land and premises being, against the form and effect of the decrees and injunction aforesaid, from the possession

thereof you remove, and to the said R. C. the full, peaceable, and quiet possession of all and singular the premises, you deliver, put and place, and so from time to time as often as necessary; and the said R. C. so being put in possession, you preserve, keep and continue, and cause to be preserved, kept and continued, according to the true intent of the decrees and writ of injunction aforesaid, and of this writ. Witness," &c.

By the act of *November session* 1800, *ch.* 88, entitled, "An act to empower the judges of the court of appeals to reinstate the cause of *Job Garretson* against *Richard Cole*," the judges were authorised and empowered, on motion, at their next session, to reinstate the said cause, if in their judgment and opinion, under all the circumstances of the case, the same would tend to do justice between the parties. The preamble to the said act stated, that it was represented that the said case at June term 1799, was decided without argument, by reason of the indisposition of the appellant's counsel, and that the decision of the said cause involved principles of great consequence to the titles to real estate; that the court of appeals had expressed their regret, that the law of the last session did not authorise them to reinstate the said cause for the purpose of hearing an argument thereon, and had intimated their willingness and desire that the same should be reinstated.

This court, in virtue of that act, at June term 1801, on motion of the appellant's counsel, reinstated the said cause, and the same was argued by *Martin*, (Attorney General,) for the Appellant, and *Ridgely* and *Harper* for the Appellee.

*Ridgely*, for the appellee(a). After stating the facts, contended that the decree should be affirmed, because *Garretson's* survey was illegal, contrary to the tenor of his warrant, contrary to the rules of the land office, and the patent was obtained by *fraud* and *false suggestion*. If these facts are established, there can be no doubt of the decision being in favour of the ap-

(a) The Reporters regret that they have not been able to procure notes of the arguments of the other counsel in the cause.

pellee. By the uniform practice of the land office, and by the tenor of the warrant directed to the surveyor, the party making a survey is interdicted from *crossing any elder survey*. If he does, so far as such survey includes vacancy after passing through the elder tract, it is *void*, or *at least so on caveat*, and as if no warrant had been executed thereon, and remains liable to *the first applicant* who *regularly executes* a warrant—for the words of a special warrant are these—*"not running your lines within the lines of any former or more ancient survey."* The plots shew that the lands interfere, and that *Garretson* did run through elder surveys. [The locations on the plots were explained to the court.] Having established the point, that *Garretson's* survey is *not one compact body*, the next inquiry is, what would have been the decision of the judges of the land office on that question? The point stands in this court in the same situation as if the caveat was now trying in the land office, and the same decision ought to take place. The judges of the land office, on hearing *Cole's* caveat, would unquestionably have ruled it *good and valid*, so *far as related to the part included by Cole's Discovery*; that part being *detached* and a tract, *apart and distinct* from the *vacancy included* in the first part, as the plots shew. If then *Cole's* certificate would have prevailed, so far as it comprehended vacancy, on a hearing in the land office, let it be considered whether *Garretson's* certificate, *fortified by a patent, fraudulently obtained* in the manner proved by the exhibits, will *preclude the interference* of a court of equity. It is a constant rule in equity, that where there is either *suppressio veri* or *suggestio falsi*, the act done or procured to be done in consequence of *either*, shall *be avoided*; and the party making use of or benefitted by such *suppression of the truth*, or such *suggestion of a falsehood*, shall derive no advantage therefrom in a court of equity. Let it therefore be inquired, whether *Garretson* hath either *suppressed the truth*, or *suggested a falsehood*, to procure his patent in the present case, and also to *avoid a hearing* on *Cole's* certificate before the judges of the land office. By adverting to

the proofs, particularly to the testimony procured from the land office, it will be found that *Garretson*, to *avoid a hearing on the merits* in the land office, and surreptitiously to obtain a patent, not only *concealed the truth*, but *suggested a falsehood*. He concealed from the judges that *Cole* lived in Baltimore county, at that very time, on the land, and also that he had got a patent; but he *falsely suggested* that he *Cole* had left the state and gone to *Juniata*, a country at an immense distance off, where a summons or notice from the land office could not reach. On *this false suggestion*, the judges, *without a hearing*, and without giving *Cole* notice to come forward to substantiate his objections, dismissed the caveat and ordered a patent to *Garretson*. The point in controversy may well be reduced to this single question—Shall *Garretson*, who could not prevail against *Cole* on the caveat, be permitted when he comes into a court of equity, to *avail himself of a falsehood* and be in a *better condition* on that account? Shall he stand in a more favourable light before this *tribunal*, where equity and justice hold and balance the scales, than he would have done if the caveat was depending in the land office? Shall a *legal* advantage obtained by a *notorious falsehood* protect him in this court? The attorney general has contended, that as the complainant paid the caution for 60 *acres only* he was entitled only to lay his warrant for 60 acres, which he has done, and which quantity he holds clear of *Garretson's* survey. The uniform practice of the land office has been *directly the reverse*. For *Cole* had a right under his warrant, when located, to *include as much vacant land* as he pleased, and provided he paid for it *in due time*, and complied with the other requisites, he was entitled to a grant. That this was the course of proceeding in the land office appears from the certificate of *Garretson* himself; for although he only paid for 100 acres of special warrant, yet he included in his survey upwards of 600 acres. He has more than 100 acres clear of *Cole's Discovery*, if that circumstance can have any weight. It is also contended by the attorney general, that *Garretson's* certificate was

Nov. 1802.

Garretson
vs
Cole

examined and passed before *Cole's* warrant was renewed the last time. This it is apprehended to be perfectly immaterial; for if the survey by *Garretson* was *originally erroneous*, no *subsequent fraudulent act* of the party himself could rectify and make it *valid*. It is not denied that *Garretson's* survey runs into and through patented lands, because the fact will not admit of denial. But the attorney general contends, that if the fact be true it cannot be material; and that if a grant can be once obtained the grantee's title is good to all the land which is not taken away by elder surveys. This position it is admitted will prevail in a *court of law*. It will also obtain in a *court of equity*, it is supposed, *against the proprietor* or *the state*, if the grant has been *honestly* and *fairly obtained*, because the caution money is all the state requires. But the attorney general will never say that a grant obtained under such circumstances as exist in the present case will stand the test of a court of equity and be adjudged to prevail against a *fair purchaser* such as *Cole*. Shall *Garretson* be permitted to take advantage of his own wrong? The attorney general admits that the owners of the patented land would have good cause to caveat, but he goes further and contends, that patent would have issued to *Garretson* for the vacant land on a corrected certificate. This is denied—it would have only issued *for the vacancy contiguous and adjoining together*, and not *for detached parcels* of land in the same survey. It is also contended by the attorney general, that *Cole* took no step to prosecute the caveat from 22d January 1773, and *that it was dismissed for want of prosecution*. This was not the true *cause*. It was the *false allegations* contained in *Garretson's* petition to the judges of the land office. If *Garretson* really wished to have had a hearing of the caveat, why did he not summon *Cole*, and let the caveat be tried on the merits? The reason why he did not is evident. He well knew that at that time *Cole* could have proved his being the first *discoverer*—His *location with the surveyor* of *Garretson's* *making his survey through elder surveys*—and also *that no grant* would have issued to him, inasmuch as

at that time *Cole had a patent for his land.* Each and every of which facts were inseparable obstacles against a grant issuing to *Garretson.* It seems that *Garretson* has denied privy to the *false allegations* contained in his petition to the judges of the land office. It is immaterial whether it was done by *him* or *his agent, qui facit per alium, facit per se.* But the attorney general contends, that it clearly appears that *Cole* could not have supported his caveat. *Cole* is willing that the case should rest on that point. It is also contended that *Garretson* had done every *thing entitling himself to a grant* before *Cole* made his survey. This is denied, for *Garretson* never could have got a grant on a hearing before the judges of the land office and the land included in *Cole's* survey, notwithstanding *Garretson's* certificate must be considered, at the time *Cole* surveyed it, as *vacant land liable to the first applicant.* The attorney general contends, that the only circumstance which would give *Cole* an *equity* would be the *prior location* of his warrant, which has not been established. This is denied by the appellee, who contends, that as soon as he made his survey, although it was *subsequent* to *Garretson's,* yet inasmuch as it was made agreeably to the rules of the land office, *being in one body,* and *Garretson's* was not, but in detached parts, not only an *equity* was created in his favour, but a *right attached* as fully as if *Garretson* had never included *Cole's* survey within his lines. It has been also said, that the *priority* of *Garretson's* location gave him a preference; this is admitted, so far as it comprehended *vacancy contiguous,* but not *vacancy detached.* And it has been contended, that although a *younger* survey runs through an *elder,* yet the patentee hath good title to all the land contained in his grant not included in the elder survey. The position is not admitted in the extent laid down by the attorney general. So far as the proprietary or state may have been interested, it has been acquiesced in, although the doctrine may not be tenable. But when such *younger* patent hath been obtained *fraudulently——* when its legal operation would tend to defeat a *fair purchaser* under a *regular* survey, a court of equity

would be established to but little purpose if it did not possess competent powers to afford relief. The cases are frequent. and the court is referred to the case of *Bowen vs. Norwood*, decided by chancellor *Rogers*, *(2 Harr. & M'Hen. 201.)* The attorney general asks, for whose benefit is the prohibition of *not running into elder surveys?* And he answers the question to suit himself, by saying that it was intended for the benefit of the *patentee* only. This was not the sole reason of the prohibition—it was, that all surveys *should be in one compact body*, and not in *detached pieces.* It was to prevent persons selecting the *good spots*, and leaving out the *bad adjoining* parts. It is also contended by the attorney general, that no person has a right to caveat but the person holding the *elder tract*, or *unless* the caveator can shew he had acquired an *interest in the vacancy before the survey is made which is caveated.* This position is not sound or tenable; for all that is requisite for the caveator to shew is, that he had *acquired a right to the vacancy, at the time of his caveat.* This was *Cole's* case. He had made a *regular* survey. *Garretson's* survey was so *incorrect* and irregular, that it was as if *no such survey existed.* It is said, that on a caveat for running through elder surveys, the judge of the land office will not *vacate* the certificate, but order it to be *corrected.* But it should be recollected, that this caveat was not made to *exclude elder tracts*, but to exclude *vacant* land, which *Garretson had no right to include*, he having crossed elder tracts for that purpose, and which vacancy *Cole* had *fairly acquired* by contract. But, says the attorney general, there are a variety of patents for what are called *double surveys.* It is admitted there are; but if *one* of the *two* parts happens to be circumstanced as *Cole's* survey is, no instance can be produced, that a patent hath been ordered *on a hearing by caveat.* It has been said that the appellee has violated the rules of the land office as much as the appellant. This is not admitted; for his survey only comprehended one *compact piece* of *vacancy.* It *does not cross elder surveys to include vacancy.* The attorney general contends, that *Garretson* had done every thing to entitle

him to a grant. This is denied; for he did not conduct himself according *to the terms* of the contract with the Lord Proprietary; that is, make his survey according to the rules of the land office. The Lord Proprietary *was not compellable* to make the grant. It has been said, that when *Cole contracted with the Lord Proprietary, he did it in his own wrong to defraud Garretson, with full notice.* Cole knew that *Garretson never contracted for vacancy* which it was necessary to cross an elder survey to come at; that *Garretson* had made no such contract with the Proprietary; and therefore he, *Cole,* acted *fairly* and *uprightly,* even if he had *full notice* of what *Garretson* had done. It is contended that *Garretson* was guilty of no *fraud,* and if he was, it cannot injure his title either at law or in equity. But would the judges of the land office have ever granted *Garretson* a patent or *dismissed the caveat on a hearing?* They certainly would not. He then obtained a grant by *suggestio falsi,* which he was not entitled to. It has been contended, that *Cole's* caveat, according to the instructions of the judges of the land office, could not be in force longer than six months, unless under very *special circumstances.* What was the universal practice of the land office? Never to dismiss a caveat, but on *hearing* or *notice.* Did not the appellant know, when he exhibited his petition, stating *Cole to be at Juniata,* that *Cole's* caveat was in force? Why did he state its existence and assign reasons for having it dismissed without a hearing if it had *previously expired?* He well knew, that if *the truth had been known* to the judges that *Cole* lived in Baltimore county, the caveat would not have been dismissed without a hearing, and consequently that he *Garretson* would never have got a grant for *Cole's* land.

THE COURT OF APPEALS [*Mackall, Jones, Potts,* and *Dennis,*](a) at this term *reversed* the decree of the court of chancery and directed the chancellor to dismiss the bill of complaint, and that each party should pay his own costs, both in the court of chancery and in this court.

(a) *Rumsey,* Ch. J. absent.

In the trial of an action of ejectment either party may avail himself of equitable circumstances in his case to prevent the relation of a grant to the date of the certificate of survey, if such circumstances exist; and whether there are such equitable circumstances is proper for a court of law to decide.

Nov. 1802.

Garretson
vs.
Cole.

The court of appeals also gave the following reasons for their reversal of the decree.

"In the argument of this cause, the doctrine of relation was fully discussed by the counsel, and seemed to be considered as making an important part of the case, and thence it may be inferred, that it may have had influence on the decision of the court.

It is therefore proper to state, that the court do not consider the doctrine of relation, as established by the courts of justice in this state, as at all involved in the question decided by this court, and neither enlarged or restricted by their decision, nor in any manner operating on the case between the parties, so far as the same was before this court as a court of equity.

In the trial of the ejectment, mentioned in the bill between the parties, in the general court, the defendant might have availed himself of any equitable circumstances in his case, to prevent the relation claimed by *Garretson* of his grant to the date of his certificate, for the tract of land called *The Silent Cyphers of Africa*, if such circumstances existed. Whether there were such equitable circumstances in his case was proper for the general court to decide.

On the trial, the complainant hath attempted to establish as grounds for relief, that the rules of the land office had been violated by *Garretson* in executing his warrant, and that the caveat of *Cole* to his obtaining a grant was discharged on a false suggestion by him, and the patent obtained by fraud. On this view of the subject, we think that *Cole* hath not supported such a case as entitled him to the relief prayed and decreed by the chancellor."