(Decided 5th December, 1872.)

---

JOHN T. B. DORSEY's Lessee *vs.* JAMES S. GARY. JOHN T. B. DORSEY *vs.* A. B. KYLE. SAME *vs.* COMFORT W. DORSEY, Executrix of WM. H. G. DORSEY. SAME *vs.* SAME. SAME *vs.* SAME. SAME *vs.* A. J. HAMPSON. SAME *vs.* CHARLES REESE and others. SAME *vs.* ALEXANDER O. BAUGHER. SAME *vs.* JOHN T. W. DORSEY.

*Finality of Judgments and Decrees—Act of 1872, chapter 310—Assumption of Judicial Powers by the Legislature.*

Except for special causes, and upon equitable grounds well defined and understood in the law, Courts of justice have no power to interfere with, or to disturb their own final judgments and decrees, after the lapse of the Term at which they have been rendered.

By the Act of 1872, chapter 310, the Court of Appeals was authorized and empowered to reopen and rehear certain enumerated cases which had been previously decided by the Court, and upon the hearing thereof, to pass such judgments, orders and decrees in the said several cases, as right and justice might require. On a motion to reinstate these cases, it was HELD:

1st. That the Legislature in passing the Act in question exercised judicial powers, and thus acted contrary to the 8th Article of the Declaration of Rights.

2nd. That conceding that the Act was constitutional and valid, there were no sufficient legal or equitable grounds for disturbing the judgments and decrees previously rendered.

Motions to re-instate certain cases in pursuance of the Act of 1872, ch. 310.

The motions were argued on briefs before Bartol, C. J., Stewart, Bowie, Brent, Miller, Alvey and Robinson, J.

*Levin Gale, I. Nevett Steele,* and *Louis T. Wigfall,* for the motions.

The Legislature had the power to pass the Act of 1872, ch. 310, authorizing this Court to rehear these· cases. In the case of *Gover vs. Hall,* 3 *H. & J.,* 43. the Legislature, nine years after the passage of a decree by the Court of Appeals, authorized the rehearing of the case, and the validity of the Act was sustained. The most distinguished lawyers of the day were engaged in the discussion of that case; and in *Williams vs. Calvert,* 10 *Md.,* 478, the binding authority of that case was recognized. There are some cases in which Acts of this kind have been held to interfere with the judicial power, by *dictating* to the Court what decree should be passed; but the Act in this case is free from that difficulty—it only authorizes the rehearing, leaving to the Court the most entire discretion as to what shall be done on such rehearing, and fully authorizing the Court to affirm, reverse or remand for further proceedings as the justice of the case may require. Whilst the Act does not imperatively require a rehearing, a proper regard to a solemn Act of the General Assembly of Maryland, should of itself go

5                       v. 37.

far to influence the Court to reinstate these causes, and to that extent exercise the jurisdiction which the law has conferred upon them.

The circumstances under which these causes arose and were heard, appeal strongly to the Court to exercise the power conferred by this Act. The testimony shews, that Mr. Dorsey, on the 1st of July, 1861, hearing that his wife was ill at her father's, in Winchester, Virginia, left his residence in Howard County, and went to Winchester. He did not go there for the purpose of remaining, but whilst attending to his wife there, who was quite ill, the Confederate armies intervened between Winchester and Maryland, and it became impossible for him to return. Mr. Dorsey subsequently entered the Confederate service, although he did not go to Virginia for that purpose; he remained within the Confederate lines until the conclusion of the late civil war— and during his absence, whilst he was within the Confederate lines, the several causes sought to be reinstated were originated against him, and various portions of his property sold. On his return, he took proceedings to vacate the sales, and open the proceedings, which were very complicated and voluminous, and it took considerable time to investigate them.

These causes should be reinstated. They were heard at a time when the legal results of the conclusion of the war had not been arrived at by any high judicial authority. The subordinate tribunals had differed, and the decision of this Court on the question of an alien enemy, has been entirely overruled by the Supreme Court of the U. S., and is not sanctioned by any authority, other than that of Bacon's Abridgement, cited in these cases, which authority can only be explained upon the theory, that the alien enemy was, at the time, domiciled within the country where he was sued, and might therefore be said to have owed a *quasi allegiance* to that country. See in

this connection, *Story's Equity Pleadings, section* 53 *and note.* In the case of *Dean vs. Nelson,* 10 *Wallace,* 158, the Supreme Court settled the question that the fact that a party being within the boundaries of a hostile army, constituted him an alien enemy, and that proceedings instituted during the war, by private individuals against him, could not affect his rights of property situated within the dominion of the United States. This decision was somewhat modified by the subsequent case of *Ludlow vs. Ramsey,* 11 *Wallace,* 581, which proceeds upon the doctrine of estoppel, and does not apply to this case, as in the last mentioned case, the party went of his own accord into the Confederate lines for the express purpose of engaging, in what may now be termed, a rebellion. At the former hearing of these cases, the unlawfulness and impossibility of giving notice to an alien enemy—its effect upon the question of interest, during the war; and especially its effect in making it absolutely impossible for an alien enemy to appoint an attorney—appear to have been entirely overlooked, or, if not overlooked, not entertained on the ground that an alien enemy had no rights whatever, which Courts were bound to respect. Modern civilization has changed the international law on this subject, and declares that an alien enemy, whilst subject to the sovereign authority for the purposes of the war, is entirely protected from individual aggression. This Court is therefore asked, under the sanction of the General Assembly of Maryland, to reinstate these causes that they may be heard with all the new lights that have been shed upon the subject, so that the various and complicated questions involved, may be fully considered in their various aspects.

*James Mackubin* for Mrs. Comfort W. Dorsey, Executrix of Wm. H. G. Dorsey, argued against the motions.

The Act of Assembly upon which these motions rest, is not mandatory, but purports only to empower. The

motion, therefore, addresses itself to the sound judicial discretion of the Court.

The Act in question is an attempt, by Legislative enactment, not simply to extend the remedy by appeal, but absolutely to annul decisions of the Supreme Judicial tribunal of the State, and to reopen causes three years after they have been fully heard, carefully considered and entirely disposed of upon their merits.

In the case of *Gover vs. Hall*, 3 *H. & J.*, 43, it is true that the Legislature authorized the Court of Appeals, *upon an appeal then pending*, to reconsider a former decision in the same case; but in that case there was a question of the *validity* of the first decision; and, besides, the case was not thereby disposed of, but was still under adjudication. In the cases at bar there can be no question about the validity of the decisions already rendered, and the matter in controversy was thereby entirely disposed of. If such decisions can be thus annulled, where is to be the end of litigation? When can rights and titles ever be regarded as settled? What security can any one have to his property?

And to what end is the Court asked to exercise a power of such doubtful constitutionality, and the exercise of which is pregnant with such mischief? Is it to recover back the money obtained under the judgments below, sought to be stricken out? Those judgments are in favor of *an executrix*, and we must presume, as in *Prout vs. Berry*, 2 *Gill*, 147, that the money has been applied and paid over under the direction of the tribunal to which she is legally accountable. If (as in fact it has been) to the payment of the debts of her testator, how is it to be recovered, and from whom? Or are these judgments to be stricken out in order to divest titles acquired under them by innocent parties who have paid their purchase money (and perchance expended more in improving the property purchased) when the money so paid has passed beyond their recovery?

Dorsey *vs.* Dorsey, *et al.*

And upon what equities are these motions based? No new facts have been elicited, nor could any be well introduced into the records upon which these cases would have to be reheard. Those records disclose a large indebtedness, evidenced in one case by a single bill, in another by a promissory note, and in the other by an open account. There never has been any pretence of a denial of said single bill, promissory note or open account. And although, among the reasons assigned for striking out said judgments, the defendant averred that said debts were not due as alleged, and that said plaintiff's testator received large sums of money for his use, which had not been accounted for, yet there was no affidavit thereto, as is *universally required* upon such motions, and the proof afterwards offered was too frivolous to merit any notice. In a word, the appellant's pretences are, and have always been, essentially and entirely technical.

And in the absence of new facts, what new legal lights have appeared, which can lead to more just conclusions than those which this Court has heretofore attained? *Dean vs. Nelson*, 10 *Wallace*, 153, has been decided, and so has *Johnson and wife vs. Robertson, et al.*, 31 *Md.*, 165, in deference thereto. But what application have they to these cases? They simply hold that no jurisdiction could be acquired in Equity, by an order of publication against non-residents who were, at the time of publication, incapable in law of receiving or responding to the notice thereby contemplated. In proceedings on attachment, however, no order of publication or notice of any kind to the *defendant* is required to give jurisdiction. All that is necessary is a notice *generally* to all the world—to be set up at the Court House door, of the suit and its object. And whatever application they could possibly have had to these cases, in so far, they are clearly revised by *Ludlow vs. Ramsey*, 11 *Wallace*, 589.

*Henry Stockbridge,* formerly counsel for James S. Gary, against the motions.

After the decision of the case of "*John T. B. Dorsey's lessee vs. James S. Gary,*" James S. Gary sold and conveyed the property in controversy in that suit. The purchaser, relying upon the finality of a decision of the Court of Appeals and the title made under it, received the deed from Mr. Gary and placed it upon record. James S. Gary afterwards died, and his estate afterwards, and before the passage of this Act was fully administered and distributed among his heirs.

If there could be a reversal of the decision of this Court in this case therefore, the practical result would be to deprive a purchaser of property bought in good faith through a misplaced confidence in the judgment of this Court, to defeat a vested right which was acquired under a decision of the Court of last resort.

This motion for a new trial discloses none of the grounds on which it rests. It may fairly be assumed, however, from the very nature of the case that there can be no newly discovered facts or evidence. The motion must rest therefore upon the allegation of error of law in the decision.

No subsequent decision of this Court—no decision of any respectable Court in christendom conflicts with a single proposition or sentence of the decision in *Dorsey vs. Gary,* 30 *Md.,* 489, and it stands as firmly in principle as upon authority.

The General Assembly has no right to pass the law under which this motion is made and the Act is a nullity upon the statute book.

The Constitution of Maryland, like those of most of the states of the Union, has always contained a proposition making the legislative, executive and judicial powers of the government separate, and distinct from each other. *Dec. of Rights, Art.* 8.

Dorsey *vs.* Dorsey, *et al.*

Under this constitutional sanction, each department has always held that the action of any one department tending upon the province of another is *ultra vires* and void. *Crane vs. Meginniss*, 1 *G. & J..* 463; *Prout vs. Berry*, 2 *Gill*, 147; *State vs. N. C. R. W. Co.*, 18 *Md.*, 193; *Miles vs. Bradford*, 22 *Md.*, 170.

The same doctrine has been asserted in almost every state of the Union. See as examples. *Powers et al. vs. Bergen*, 2 *Seld.*, 358; *Ward vs. Barnard*, 1 *Aik.*, 121; *Bates vs. Kimball*, 2 *Chip.*, 77; *Lewis vs. Webb*, 3 *Greenleaf*, 326; *Calder vs. Burr*, 3 *Dall.*, 386; *Sedgwick on Statutory and Constitutional Law*, 177.

If the Act of 1872, chap. 310, were law, it would drive the appellant out of Court. It requires this Court to decide the case as " right and justice may require," and the appellant's only standing in Court was on the footing of a bare legal technicality, not of equity or justice. He never owned the property which he sought to recover by the ejectment. It belonged to his father who devised it undivided to his children, viz: J. T. B. Dorsey, Wm. H. G. Dorsey, and their three sisters, for whom John T. B. Dorsey, and Wm. H. G. Dorsey were, by the will, made trustees. John T. B. Dorsey, this appellant, mortgaged his undivided interest for more than it was worth, and went to parts unknown, and Wm. H. G. Dorsey shortly afterwards died. There were practically no trustees, and the *cestuis que trust* were compelled to stand helpless by and see their patrimony subjected to every waste and destruction, and this was in the then turbulent times, so gross and wanton that it bade fair soon to leave them penniless. They therefore went into the Circuit Court, and asked that the Court would protect them, appoint a trustee, and decree a sale of the property. The Court deemed the request reasonable, decreed the sale, and appointed a trustee. The trustee sold the property at a high price—more than it is worth to day—to

James S. Gary, who bought in good faith, paid the purchase money, and received his deed and possession of the property. The purchase money so paid by James S. Gary was distributed by the Court: one-fifth to John T. B. Dorsey's mortgagee,—one-fifth to Wm. H. G. Dorsey's widow and orphans,—and one-fifth to each of the sisters *cestuis que trust.* John T. B. Dorsey returned and instituted this ejectment. He sought by it to take from James S. Gary without restitution, the property which he had thus bought and fully paid for. He now seeks to wrest the same from James S. Gary's grantee who took the same in faith that the decision of the Court of last resort meant something; and he seeks this in the name of "RIGHT AND JUSTICE." When he gets it, *haud equidem invidebo, mirabor magis.*

*Thomas Donaldson,* for Hampson, Kyle, and Reese & Co., suggested the following points against the motions:

*First.*—The judgments of the Court of Appeals having been for a long time rendered, there is no power in the Legislature to order a rehearing.

*Second.*—The Act of 1872, ch. 310, merely "authorized and empowered" the Court of Appeals to reinstate said cases, so that discretion remains in this Court to reinstate or not, even if there be validity in the Act of Assembly.

*Third.*—The cases will not be reinstated unless the Court finds that there are grounds for reconsidering its former opinion, which did not exist at the time the former judgments were given.

*Fourth.*—No such grounds exist; the reasons given by this Court, in its opinion formerly expressed in these cases, are still sufficient to produce the same result, if the cases should be reheard.

*Fifth.*—Even if the Court should consider that its ruling in the case of *Johnson vs. Robertson,* 31 *Md.,* 476, is hereafter to be adhered to, yet these cases being cases

of attachment, in which no notice or service of notice is required by a statute, are not affected by the doctrine of that case.

*Sixth.*—The appellant is still indebted to the appellees, in a large amount, for costs, which have never been paid by him

*Seventh.*—As to the cases of Charles Reese & Co: and A. J. Hampson, it never has been pretended by the appellant that the amounts charged in both—being for provisions and family groceries—were ever discharged.

BARTOL, C. J., delivered the opinion of the Court.

These several appeals were argued and decided in this Court at the April Term, 1869, and are reported in 30th Md., 489, 512 and 522.

By an Act of Assembly passed at the last session, (1872, ch. 310,) it was enacted as follows: *"that the Court of Appeals be and they are hereby authorized and empowered to reopen and rehear"* the said cases; *"and upon the hearing thereof, to pass such judgments, orders and decrees in the said several cases, as right and justice may require."*

Motions were made at the last Term, on behalf of the appellant, to have the several cases reinstated, in pursuance of the Act, in order that they may be reheard and decided anew; the motions being resisted on the part of the appellees, leave was given to the respective counsel to file notes of argument upon the motions, which was done; but at so late a period of the Term as not to afford time or opportunity for the Court to consider and decide the important questions involved, before the adjournment. These have since received our careful consideration, and we now proceed briefly to express our judgment upon the motion.

The proceeding which this Court is now asked to take, is based altogether upon the Act of Assembly to which

we have referred. The subject-matter to which the Act relates is certain judgments and decrees in suits between private parties, rendered by this Court at the April Term, 1869, and the purpose of the Act is to authorize and empower this Court to reopen and rehear the cases, in order that other and different judgments and decrees may be rendered between the parties.

Have we the lawful authority or power to do this, or can the General Assembly constitutionally confer upon this Court such power? These are vital and important questions which present themselves at the threshold of the case.

The effect of a final judgment is to conclude the rights of the parties litigant upon the subject-matter in controversy. The Constitution declares (Art. 4, sec. 15,) that "the judgments of the Court of Appeals shall be final and conclusive." It was said in *Munnikuyson vs. Dorsett,* 2 *H. & G.,* 374, "Judgments at law are not lightly to be interfered with;" and again, in *Kemp & Buckey vs. Cook & Ridgley,* 18 *Md.,* 131, it was said that "the judgment records of the State are the highest evidences of debt known to the law; they are presumed to have been made up after the most careful deliberation, upon trial or hearing of both parties. To permit them to be altered or amended without the most solemn forms of proceeding would be contrary to law and good policy."

Except for special causes, and upon equitable grounds well defined and understood in the law, and which do not exist in these cases, courts of justice have no power to interfere with or to disturb their own final judgments and decrees after the lapse of the Term in which they have been rendered. The powers of this Court in this respect are no greater than belong to every Court of record.

Independently of the provisions of the Act of Assembly on which this motion is based, it is very clear that this

Court possesses no power or authority to interfere with its solemn and final judgments and decrees rendered at the April Term, 1869, or to reopen and rehear the cases then decided, for the purpose of correcting supposed errors therein, or of altering or changing the judgments and decrees then rendered.

This Court is not clothed with any such arbitrary authority. Its exercise would be simply to deprive parties of their vested rights, after they have been adjudged and established by final judgment.

Can the Legislature constitutionally confer such a power upon this Court? or, in other words, is the Act of 1872, ch. 310, a valid and constitutional exercise of the legislative power?

If this question were presented for the first time in Maryland, we should have little hestitation in answering it in the negative, for reasons which will be presently stated ; but it is supposed to be settled by precedent. It is said that such legislation has been heretofore practiced in this State, and been sanctioned and acted upon by the Court of Appeals ; and that it is too late now to question its validity. This makes it proper to refer to the several cases in which special Acts of Assembly of this kind, have been acted on by the Court of Appeals.

In *Garretson vs. Cole,* 1 *H. & J.,* 391, the Court of Appeals at June Term, 1801, reinstated the case which had been decided at June Term, 1799, under the Act of 1800, ch. 88, which "authorized the Court to reinstate the case if in their judgment and opinion under all the circumstances of the case, the same would tend to do justice between the parties." The Act was passed under peculiar circumstances, and it does not appear that any question was made or argued touching its constitutionality or validity,

In *Gover vs. Hall,* 3 *H. & J.,* 43, it appears that a bill had been filed in 1772, and a decree had been passed by

the Chancellor therein in 1797, from which an appeal was taken, and at June Term, 1800, the Court of Appeals reversed the decree of the Chancellor, and remanded the cause with instructions, for accounts to be stated, &c.

Whereupon in the Chancery Court upon further proceedings, on the 28th day of November, 1803, a decree was passed, and another appeal was taken; pending which, an Act of Assembly (1809, ch. 87,) was passed; reciting, that the Court of Appeals by which the first appeal was decided, consisted of Judges RUMSEY, MACKALL and JONES; that Judge RUMSEY, who presided, declared himself disqualified to sit by reason of near relationship to one of the parties, &c. And doubts were entertained as to how far such decree was conclusive, and the Court had ordered an argument of that question; and the Act authorized, empowered and *directed*, the Court to hear and determine the matter of the decree of 1800, in the same manner as if that decree had not been made. The Court proceeded under the Act of Assembly; but it does not appear that its validity or constitutionality, was called in question. The argument of the counsel is not reported. In the opinion delivered by the Court, nothing is said on the question of the power of the Legislature to pass the Act; and as in the previous case of *Garretson vs. Cole*, the constitutional question appears to have been waived. Neither of those cases can, in our opinion, be relied on as any adjudication by the Court upon the question of the constitutional power of the Legislature. In *Gover vs. Hall*, the Act of Assembly was by its terms mandatory upon the Court; *directing* that the case should be reheard on its merits, as if no decree had been passed; which was manifestly beyond the constitutional power of the Legislature to do, and if it had been questioned, must have been so held, as was afterwards decided in *Prout vs. Berry*, 2 *Gill*, 147,

where it was held, that an Act conferring upon the Court the right to hear an appeal in a special case after the time allowed by the general law had passed, was null and void; because it directed the Court to decide the cause in the same manner as if the appeal had been taken in time; which in view of the facts of the case, and the terms of the decree, the Court considered could not be done without unsettling vested rights. Judge ARCHER speaking for the Court, (p. 150,) says: "whatever might be said, were the question a new one, as to the power on the part of the Legislature to confer on this Court the right to hear appeals in special cases, after the time allowed by the general law for an appeal had passed by; it is now too late to question it; but such a law to have efficacy, must leave us untrammelled as to the mode or manner of administering justice."

In *Miller vs. State, use of Fiery,* 8 *Gill,* 145, the Court declared the Act of 1845, ch. 358, unconstitutional and void, as an exercise by the Legislature of judicial powers. The Act required Washington County Court to grant an appeal in a certain case, and to set out and embody in the record certain bills of exceptions designated in the Act. The Court rested its decision upon *Crane vs. Meginnis,* 1 *G. & J.,* 463, in which it had been held, that the allowing of *alimony,* was a judicial act, not within the power of the Legislature granting the divorce, and that the Act of Assembly, in so far as it provided for alimony, was void. The last case cited as furnishing a precedent for the Act of 1872, now under consideration, is *Calvert vs. Williams,* 10 *Md.,* 478, 495.

In that case a bill was filed in the Court of Chancery, in June, 1850; an interlocutory decree passed in April, 1851, and a final decree on the 31st of May, 1853. The Auditor's Report was made on the 12th of July, 1853, and confirmed on the 28th of the same month, and a *fi. fa.* ordered thereon, the 15th of November, 1853.

On the 17th day of February, 1854, a petition was filed to open the enrollment of the decree, which was set down for hearing the 2nd of March, 1854; an answer to the petition was filed on the 4th of March; the case was removed to the Circuit Court on the 9th of March, and on the 10th, the Act of Assembly was passed. (1854, ch. 160.) That Act authorized the Circuit Court, provided a satisfactory *prima facie* case should be shown justifying it, to open the decree, to the end that Williams may account, &c., provided, the Court be satisfied that justice should be done by opening, &c., and to grant him such redress as upon principles of equity and justice he may show himself entitled to.

The validity of the Act of Assembly was questioned, and much discussed. Judge BREWER in his very able opinion, (p. 486,) considered that question settled in favor of the validity of the Act by the cases of *Gover vs. Hall*, 3 *H. & J.*, 43; *Crane vs. Meginnis*, 1 *G. & J.*, 463; and *Prout vs. Berry*, 12 *G. & J.*, 286. "The case" he said, "comes within the established principles of those cases." He then refers to the carefully guarded provisions of the Act, and to the special circumstances of the case; and on page 489, says: "Independent of the particular provisions of the Act of Assembly, I think there would have been sufficient ground for opening the decree."

The Court of Appeals affirmed the ruling of Judge BREWER. Chief Justice LEGRAND, speaking for the Court, uses the following language: (495) "Whilst we affirm the decision of the Circuit Court, we wish to be understood as doing so only in deference to past decisions in regard to such Acts as that of 1854, ch. 160. Were we called upon for the first time, to pronounce on the constitutionality of such legislation, we would not hesitate to decide against it; but we do not feel at liberty to do so, when the past history of our jurisprudence shows our

impressions have not been shared by those who have gone before us.''

This language of the Court, employed with reference to the Act of Assembly then under consideration, is a plain and significant expression of the Court's opinion as to the real character and effect of such legislation. The Act of 1854, to which this language was applied, simply authorized a lower Court to open a decree by default, to let in a meritorious defence. The equities calling for such rehearing were such, that the Judge below said, as we have before stated, that in his opinion *"there would have been sufficient ground for opening the decree, independent of the particular provisions of the Act of Assembly."*

The Act now before us goes much further, and appears to us to be much more liable to objection.

It undertakes to confer on this Court the power, at its discretion, to annul and set aside its final judgments and decrees, rendered several terms ago upon full hearing and after careful consideration. If such legislation were sustained, there would be no end to controversies.

By the organic law of the State it is declared " that the Legislative, Executive and Judicial powers of the Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other.''—*Declaration of Rights, Article* 8.

It requires no argument to show that such legislation as the Act before us, is contrary to the intent and meaning of this Article, and is an exercise by the Legislature of judicial powers.

We have said thus much of the Act of Assembly on which this motion is based, because we are unwilling by our silence to appear to give our sanction to such legislation. At the same time we have been induced by a feeling of respect for the acts of a co-ordinate branch of the

Government, to give our most careful consideration to the suggestions and reasons which have been urged in argument by the appellant's counsel, in support of the motions; and have come to the conclusion that there are no sufficient grounds for opening the judgments and decrees heretofore rendered, even if our power to do so were unquestionable.

Under the Act of Assembly, if it be conceded to be constitutional and valid, the motion addresses itself to the discretion of the Court, and we have seen no sufficient legal or equitable grounds for disturbing the judgments or decrees heretofore rendered. Upon a careful review of the decisions in the several cases, we are of opinion that the supposed errors which have been suggested do not exist, and that the rehearing of the cases could result only in leaving the original judgments and decrees undisturbed.

It has been suggested that the opinions expressed by this Court in the former decision of these cases, with respect to the liability of a citizen of Maryland who was voluntarily within the Confederate States during the late civil war, to be proceeded against as an absentee, either by process of attachment against his property, or by a suit in Chancery to subject his lands within this State to sale under a mortgage,—are contrary to the recent decisions of the Supreme Court of the United States on that question. But an examination of those decisions will show that there is no conflict between the decisions of this Court in 30th Maryland, and the latest decisions of the Supreme Court in *Ludlow vs. Ramsey*, 11 *Wallace*, 381, and *McVeigh vs. The United States*, 11 *Wallace*, 259.

Since these motions were submitted, we have heard the very full argument, at the present Term, of the case of *J. T. B. Dorsey vs. Mary A. T. Thompson, and others*, (*ante* p. 25,) in which the same questions involved in the decision of the cases referred to in the Act of Assembly,

and embraced in these motions, were discussed. They have been re-examined by us in disposing of that case, and we refer to the opinion of this Court therein, as an answer to much of the argument urged in support of these motions.

